**SO ORDERED.**

**SIGNED June 15, 2007.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

IN RE: MICHAEL H. WARREN                                CASE NO: 05-33479

COMMUNITY TRUST BANK
        Plaintiff
VERSUS                                                  ADVERSARY NO.: 05-3063

MICHAEL H. WARREN
        Defendant

### REASONS FOR DECISION

This matter comes before the court on plaintiff's motion for summary judgment declaring that debts due by the defendant are non-dischargeable, and on the defendant's cross motion for summary judgment, the thrust of which is that the relief sought by the plaintiff is time-barred. This is a core proceeding pursuant to 28 U.S.C. §157(I), inasmuch as it concerns the dischargeability of particular debts. Jurisdiction is proper per 28 U.S.C. §1334 and by reference from the District Court pursuant to Local District Court Rule 83.4.1, incorporated into Local Bankruptcy Rule 9029.3. No party has moved to withdraw the reference and the district court has not done so on its own motion.

This Court makes the following findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, the plaintiff's motion for summary judgment is granted in part and denied in part. The defendant's cross-motion for summary judgment on the basis that the relief sought by the plaintiff is time-barred is denied.

## Historical Background

Michael H. Warren was the controlling shareholder and president of Marvin Ramsey Auto Sales, Inc. That corporation filed a petition under Chapter 11 on January 18, 2001, but it was converted to a case under Chapter 7 shortly thereafter on January 31, 2001. (Case no. 01-30092.) Warren filed personal petitions for bankruptcy relief on two occasions, in 2001 and 2003, which were both dismissed.[1] Warren filed the instant-related personal bankruptcy petition on October 14, 2005, just prior to the effective date of BAPCPA, the Bankruptcy Abuse Prevention and Consumer Protection Act. In the years between the corporate and the instant personal filing, Community Trust Bank (hereinafter "CTB"), a creditor of the corporation and of Warren, filed various suits in state court to enforce its floorplan mortgage.[2]

CTB alleges that the corporation under Warren's management was severely out of trust on its floorplan mortgage, ultimately leaving CTB holding certificates of title to 35 vehicles valued at approximately $450,000.00, for which the vehicles or the sales proceeds were missing. This conduct, CTB alleges, constituted larceny, fraud or defalcation while acting in a fiduciary capacity. Further, CTB alleges that Warren issued materially false financial statements, on which it reasonably

---

[1] See Doc. #7, Prior Filing memo, Case no. 05-33479.

[2] See Doc. #70, Affidavit of Peyton Dowell, in support of motion for summary judgment, Adversary no. 05-3063.

relied in making the loan, and that they were made or published with the intent to deceive or with a reckless regard for the truth. CTB alleges that Warren instructed his bookkeeper to repeatedly falsify the monthly operating reports to misrepresent the financial condition of Ramsey Auto Sales by reflecting a positive cash flow, overstating both the market value of the inventory and the number of contracts in process. Warren also allegedly instructed the bookkeeper to conceal amounts due the State of Louisiana for tax, title and license fees, the amounts he withdrew from the business, and to understate the amount of debt owed by the business.

In his affidavit in support of the cross-motion for summary judgement, Warren admits he pled guilty to bank fraud, states that he has been making his restitution payments, but asserts that the loss of CTB's collateral was due to other Ramsey Auto employees selling cars and keeping the proceeds without his knowledge.[3]

## Law and Analysis

It is well settled that the burden of proof in dischargeability actions is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 St. Ct. 654 (1991); *Matter of Beaubouef*, 966 F.2d 174 (5th Cir.1992). Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate only if the movant demonstrates that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law.

---

[3]See Doc. #72, Affidavit of Michael Warren, in support of cross-motion for summary judgment, Adversary # 05-3063.

3

F.R.C.P. 56(c); *H.R. Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 4/8/2003). If the moving party meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc).

In ruling on a motion for summary judgment, the evidence should be considered in the light most favorable to the non-movant. *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983). However, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

It is undisputed that Warren entered into a plea agreement with the Office of the United States Attorney on February 24, 2003, and pled guilty to bank fraud, for which he was ordered to make restitution to CTB of approximately $96,533.00. The parties agree that the amount in the restitution agreement is non-dischargeable under 11 U.S.C. §523(a)(13). Thus, there is no dispute as to that issue, and CTB's motion will be granted as to the non-dischargeability of the restitution amount.

Turning to the remaining issue of the dischargeability of the balance owed on the floorplan mortgage, 11 U.S.C. §523(a)(2)(A)(1) excepts from the discharge debts for money, property, services, or an extension, renewal or refinancing or credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement in writing respecting the debtor's or an insider's financial condition. Sub-section (a)(2)(A)(2) excepts from the discharge such debts based on the use of a statement in writing that is materially false, respecting the debtor's or an insider's financial condition, on which the creditor to whom the debtor is liable for such money, property, services or credit, reasonably relied, and the debtor caused to be made or published with

4

intent to deceive.

Section 523(a)(4) excepts from the discharge debts for fraud or defalcation in a fiduciary capacity, embezzlement or larceny. Simply put, embezzlement claims arise when a shortage arises or a taking occurs from funds coming into the possession of a party lawfully, such as theft from an employer, but the misappropriation is unlawful. In larceny, the funds come into the possession of the wrongdoer unlawfully. Defalcation while acting in a fiduciary capacity has been defined as a willful neglect of duty, even if not accompanied by fraud or embezzlement. *In re Schwager*, 121 F. 3d 177, 182 (5th Cir. 1997), quoting *In re Moreno*, 892 F. 2d 417 (5th Cir. 1990). That standard for defalcation being "recklessness," it may even include an innocent default, thus encompassing an innocent fiduciary who was short in his or her account. *Id.*

The question of who is a fiduciary is a question of federal law, but state law is relevant in determining if there is a pre-existing trust-type obligation. Fiduciary obligation cannot be created establishing misappropriation or the act of taking itself. *In Re Angelle*, 610 F.2d 1335 (5th Cir. 1980). State law, however, is instructive in determining the type of situation in which trust like obligation, i.e. fiduciary capacity, is imposed. Thus a general partner of a limited partnership is a fiduciary (*Schwager*), as well as a corporate president (*Moreno*) and former law partner under an agreement to share fees with his former partners (*Gravel v. Roy*). *Gravel v. Roy*, 130 B.R. 214 (Bankr.W.D.La. 1991), aff'd 143 B.R. 825 (W.D.La. 1992).

**Summary of the Evidence**

Uniform Local Rules 56.1 and 56.2 impose certain requirements on both the movant and opponent in a summary judgment matter. Both parties have now complied with those requirements. A hearing was held on the Motion for Summary Judgment on May 30, 2007, at which time the court

5

directed the parties to supplement the record on the Motion for Summary Judgment, due to various deficiencies in the record, particularly the assertion by Warren that CTB's action is time-barred. On June 6, 2007, the plaintiff filed a Supplemental Affidavit of Peyton Dowell, stating that he is in charge of litigation coordination for CTB, and attesting to the filing of various complaints in bankruptcy proceedings (the instant case and adversary proceeding are not the only proceedings instituted by Warren or CTB) and various state court suits. On June 6, 2007, Warren filed an Amended Statement of Uncontested Facts, (Doc. # 71), which is indistinguishable from the original filed on June 1, 2007 (Doc. #68). Finally, on June 11, 2007, CTB filed a counter-affidavit of its representative, Peyton Dowell, concerning its litigation against Warren, (Doc. #74).

In support of its motion for summary judgment, plaintiff offers Warren's deposition, asserting that he admitted selling vehicles out of trust, pled guilty to bank fraud, and that the amount of $424,948.98 claimed in its discovery reasonably reflects a payment history of his loans through CTB, with credits. Additionally, it offers a copy of the Answers to Interrogatories and Request for Production of Documents. CTB's statement of uncontested facts show that CTB relied on the statements issued by Ramsey and/or Warren, and prepared at the direction of Warren in loaning the funds subject to the mortgage. CTB alleges those statements falsely reflected Ramsey as still owning vehicles subject to CTB's lien but which were previously sold by Ramsey and CTB already paid. The affidavit also asserts that financial statements failed to reflect amounts owed for taxes or transfer fees due the State of Louisiana, understated the amount of funds withdrawn by Warren from the business, overstated earnings and failed to disclose the pledge to another lender of corporate assets on which CTB held liens, which pledge was used by Warren to facilitate personal investments.

CTB later filed the affidavit of Peyton Dowell, Vice-President of CTB, asserting that he is familiar with the accounts of Warren and Ramsey Auto, and established the various filing dates for the state civil suits filed against Warren and Ramsey Auto between 2001-2003 to enforce its mortgage. Plaintiff's initial statement of uncontested facts asserts that Warren admitted to selling vehicles out of trust covered by CTB's floorplan mortgage, pledged corporate assets to finance personal investments at another bank, issued false financial statements reflecting the vehicle inventory and personal draws and a corporate profit, as opposed to a loss. (Doc. # 55.) Warren, in turn, filed a statement of uncontested facts focusing on the time periods involved in his operation of Ramsey Auto Sales, admitting he pled guilty to bank fraud and owes restitution in the amount of $96,533.00 for 12 vehicles identified in the pre-sentence report of the probation office. He also notes that plaintiff's original complaint stated a claim against the debtor for an amount of $145,259.72, and that complaint has not been amended. (Doc. #68). On June 7, 2007, Warren also filed his own affidavit in support of his motion for summary judgment, stating that "all CTB lawsuits against him except one suit in West Monroe City Court have previously been dismissed by CTB." (Doc. # 72.) On June 11, 2007, CTB filed a counter-affidavit challenging the defendant's characterization of the result of the lawsuits against him. Dowell states "CTB has two judgments against Warren and several outstanding promissory notes. Additionally, CTB has filed numerous garnishment proceedings against him." (Doc. #74.)

The thrust of the defense is that the loss to the plaintiff is subsumed in the plea agreement in the criminal case. Warren admits that loss occurred in the range of $100,000.00, to which he pled guilty. (Doc. # 52, Exhibit "D," Deposition, p. 22.) He also acknowledges that some sales taxes were not being remitted during his operation of Ramsey Auto Sales, but is uncertain of the amount,

7

and that he admitted to the sale of items out of trust in his plea. (*Id*., at 27-28, 30.) He testified that the plea agreement concerned some 18 to 19 vehicles for a total of $96,000.00. (*Id.*, at 41.) He does acknowledge that the floor plan was for $500,000.00 and that there were other debts incurred to pay part of the purchase price to the previous owner, Marvin Ramsey. (*Id*., at 75-76.) He does acknowledge that he was acting as a fiduciary in the sale of the vehicles, and that he failed to fulfill the responsibilities as such, even though such failure was "accidental." (*Id*., at 84-85.) He denied having intentionally given the bank false financial statements, insisting that any errors were the fault of his employees. (*Id.*, at 88.) He also testified that he thought the business was making money until "the end." (*Id.*, at 90.) In short, Ramsey denied virtually every alleged false statements except to acknowledge that the taxes had not been paid, although Warren denied knowledge of that fact until after the business was closed. (*Id.*, 98-101.) He explains various receipts from the business as either draws or bonuses. (*Id*., 100-101.)

An inordinate amount of time has been wasted by both sides in this adversary proceeding by focusing on the debtor's argument that the actions by CTB are barred by the statutes of limitation, or, as stated under Louisiana Law, have prescribed. The defendant raises this contention in his motion for summary judgment (Doc. #45), asserting that the plaintiff's claim arose in tort under Louisiana Civil Code Article 2315. Thus, defendant asserts that the plaintiff's allegations of fraud are barred by the lapse of one year from the date of injury to file suit, pursuant to the Louisiana Civil Code Article 3492, and that the plaintiff took no such action in the state court. Defendant, who has the burden of proof on this issue, expanded on this argument in a supporting memorandum, discussing the distinction in Louisiana Jurisprudence between actions based on intentional conduct (tort) or for breach of contract.

8

During the argument at the hearing, it became clear that a number of lawsuits had in fact been filed by CTB against Warren despite the filings of a number of bankruptcy petitions by the latter. In fact, the supplemental affidavit of CTB's representative establishes that it held four loans, all of which originated in calendar year 2000. None of the notes were due prior to January 1, 2001. Warren filed the first of a number of bankruptcy petitions in September, 2001. In fact, between bankruptcy filings, and in addition to filing various complaints in connection with bankruptcy cases, including the instant complaint, CTB filed the following suits:

> (1) Petition for Executory Process, Suit No. 01-0160, on the Docket of the Fourth Judicial District Court for Ouachita Parish, on January 12, 2001.
>
> (2) Suit entitled Community Trust Bank v. Michael H. Warren and Karen T. Warren, suit No. 01-0514, Fourth Judicial District Court for Ouachita Parish, on February 5, 2001.
>
> (3) Petition in a Revocatory Action on February 15, 2001, Suit No. 01-0758, 4th Judicial District Court, entitled Community Trust Bank v. Michael H. Warren, Warren-Coleman, LLC, and Doug & Kindra, LLC, and it obtained a money judgment dated April 30, 2001, in the amount of $51,656.41, with interest, costs, and attorney fees.
>
> (4) Petition for Amount Due in Case No. 03-5415, on the docket of the Fourth Judicial District Court for Ouachita Parish, Louisiana, on December 12, 2003, styled Community Trust Bank v. Karen T. Warren and Michael H. Warren.

In addition, various actions to make judgments executory in other parishes and for garnishments were filed. Finally, the counter affidavit filed by CTB establishes that a judgment was rendered against Warren in excess of $56,000.00, plus interest, costs and attorney fees

We observe, in passing, that actions on promissory notes in Louisiana are barred by the lapse of five years from the date of maturity. La.Civ.Code art. 3498; *See eg. Harrison v. Smith*, 814 So.2d 42, 2001-0458 (La.App. 1 Cir. 3/28/02)(Actions on promissory notes are subject to a liberative prescription of five years. Prescription begins to run from the day payment is exigible.);

9

*Anthon v. Knox*, 155 S.2d 53, 55 (La.App. 1 Cir. 1963) (Prescription begins to run on an accelerated note upon acceleration.). The revelations of the affidavits/counter-affidavit do not, however, enlighten the court as to whether recovery for fraud was sought in any of these actions.

Simply put, however, instead of the back-and-forth suppositions regarding the filing and resolution of each lawsuit, that matter of fact could have been easily set forth in summary evidence by producing copies of the various state court records as part of the records in support of the cross-motions for summary judgment. Defendant's focus on the statute of limitations issue demonstrates a lack of preparation, but that same weakness permeates the plaintiff's case as well. These reasons will return to the relevance of the state court litigation, but at this point, we turn to the plaintiff's contentions.

Plaintiff has offered not a shred of documentary evidence in support of its claim that Warren gave it false financial statements. Although the supporting affidavit attests to reliance on such statements, this Court believes that it must do more than simply speculate on the contents of documents which have not been offered, especially where the contents of same and, indeed, the authorship and/or responsibility for which, are disputed by the defendant.

While Warren acknowledges some role as a "fiduciary," he does so in the context of his role as owner and officer of the corporation, and not as to a pre-existing fiduciary relationship between himself and CTB. While it is entirely conceivable that Warren guaranteed the floorplan arrangements between CTB and Ramsey Auto Sales, no documentary evidence to that effect was produced, and the court is not free to make such a determination in a vacuum. Indeed, it is unclear whether CTB is relying on the theory of breach of fiduciary duty, embezzlement or larceny. In its supporting brief, CTB cites cases where the parties had an agreement whereby a floorplan financier

10

was entitled to the sales proceeds which were to be held "in trust" to be delivered to the lender, and another case relating to larceny.

If the plaintiff's contention is that there is a loss or defalcation in a fiduciary capacity, only when a plaintiff has established that a trust relationship was created, does the burden of proof shift to the debtor to explain the loss or deficiency. In *Gravel v. Roy*, for example, the relationship between the attorney-debtor and his former partners was clearly one of a fiduciary. *Gravel v. Roy*, 130 B.R. 214. The loss was then established by a list of lawsuits, the proceeds of which Roy had failed to account for and remit to his former partners.

Finally, CTB cites the larceny case in support of the contention that this court should give collateral estoppel effect to Warren's plea. That issue is moot in view of the agreement between the parties that the amount fixed by that plea is non-dischargeable. Beyond that, plaintiff has not offered a transcript of the criminal proceedings in those proceedings reflecting a finding of larceny. Moreover, plaintiff has not established that there is in fact any amount owing an amount exceeding the restitution award. In this regard, the plaintiff's case against the debtor is flawed from the outset.

That the amounts sought by CTB constitute a moving target is an understatement. Only if this court were to conclude that Warren not only owed a pre-existing fiduciary duty to CTB and also breached that duty, the burden would then shift to the debtor. Any defendant would be hard pressed to account for a loss that is at best undetermined and seemingly inchoate. Plaintiff's complaint alleges a claim in excess of $145,000.00. Peyton Dowell's affidavit suggests a payment history figure in excess of $450,000.00. Warren acknowledges a floor plan amount of $500,000.00 plus additional loans. CTB's discovery responses show that the bank was holding original titles of 47 vehicles, valued at $433,608; of which 23 were "missing" and 24 were accounted for, for a total in

11

"missing sales proceeds" of $232,602.00. CTB showed a net recovery of $200,000.00 after expenses through an auction in the Ramsey bankruptcy, and acknowledged that there were other vehicles on an inventory list that "we can sell." (Discovery Responses filed May 11, 2007.) Another document lists 12 vehicles, the significance of which is not clear. The last filing of the counter affidavit establishes that CTB obtained a money judgment in excess of $56,000.00 in a revocatory action, but the relationship of which to the recovery sought herein is not explained.

In this regard, this Court declines to adopt the tempting suggestion by counsel for the plaintiff, in oral argument, that the determination of the sums owed by the debtor to the plaintiff be left to the state courts. This is not a tenable result on this record. This debtor has been imprisoned and has entered a plea to bank fraud in a federal court proceeding with restitution ordered. While this scarcely militates in favor of concluding that the debtor-malefactor is the sort of honest but unfortunate debtor entitled to the benefits of a fresh start, it does not entitle the plaintiff to leapfrog over its obligation to prove its case by a preponderance of the evidence, or the deprivation of the defendant's day in court by a suspect ruling in plaintiff's favor on a poorly supported motion for summary judgment. A similar result must obtain as to the defendant's unconvincing assertion that the plaintiff's action is time-barred.

**Conclusion**

The Plaintiff's Motion for Summary Judgment is granted in part as to the amount set forth in the restitution award pursuant to 11 U.S.C. §523(a)(13). In all other respects, these motions for summary judgment are Denied. A separate and conforming order will be entered.

# # #